IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dona Kare_Kowalski and Robert Kowalski,<br> Individually and on Behalf<br>of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION,<br>a Delaware corporation;  BANK OF AMERICA<br>CORPORATION, a Delaware corporation;<br>COUNTRYWIDE BANK, FSB, a Virginia corporation;<br>and COUNTRYWIDE HOME LOANS, INC.,<br>a New York corporation,<br><br>        Defendants. | )<br>)<br>)<br>)<br>) No._____<br>)<br>) FILED: OCTOBER 3, 2008<br>) 08CV5643<br>) JUDGE HIBBLER<br>) MAGISTRATE JUDGE KEYS<br>) MHN<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

Dona Kare Kowalski and Robert Kowalski("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, states as follows:

### INTRODUCTION

1.     This is a consumer class action lawsuit brought on behalf of Plaintiff, individually, and on behalf of persons whose private personal information  was intentionally and illegally sold by an employee of Defendants in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").  Defendants deliberately and/or recklessly did not maintain reasonable procedures designed to limit the furnishing of Private Information for the permissible purposes outlined under the FCRA.  As a result of Defendants' deliberate, reckless, and/or negligent violations of the FCRA, their high-level employee obtained Plaintiff and Class members' Private Information,  as defined herein, and sold said information to third parties without the consent of Plaintiff and the members

1

of the Class and for no permissible purpose under the FCRA.

2.      Defendants' actions constitute violations of the FCRA, as well as common law negligence and breach of contract.

3.      Plaintiff seeks damages suffered as a result of Defendants' practices, including but not limited to statutory damages, compensatory damages and injunctive relief.

4.      As defined in the Fair and Accurate Credit Transactions Act of 2003, Pub. L. 108- 159, Dec. 4, 2003 (FACTA) "identity theft" is a fraud that is committed or attempted, using a person's identifying information without authority.   Generally, identity theft occurs when a person's identifying information is used to commit fraud or other crimes.   These crimes include credit card fraud, phone or utilities fraud, bank fraud, and government fraud.   The Federal Trade Commission ("FTC") has stated that identity theft has been a serious problem in recent years, with approximately 9 million Americans as the victims of identity theft each year.

5.      As the United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report"), more than 570 breaches involving theft of personal identifiers such as social security numbers were reported by the news media from January 2005 through January 2006. As the GAO Report states, these data breaches involve the "unauthorized or unintentional exposure, disclosure, or loss of sensitive personal information, which can include personally identifiable information such as Social Security numbers (SSN) or financial information such as credit card numbers."

6.      The GAO Report stated that identity thieves can use identifying data such as social security numbers to open financial accounts and incur charges and credit in a person's name.   As the GAO has stated, this type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft and can cause significant harm to the victim's credit rating.

7.     In addition, the GAO states that victims of identity theft will face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

8.     According to the Federal Trade Commission (FTC), nine million Americans have their identities stolen each year. Identity theft victims must spend countless hours and money repairing damage to their good name and credit record.  Identity thieves use stolen personal information such as social security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.  In addition, a person whose personal information has been compromised may not see any signs of identity theft for years.  According to the United States Government Accountability Office, which conducted a comprehensive and extensive study of data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years.  As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

9.     Identity theft crimes often include more than just crimes of financial loss.  Identity thieves also commit various types of government fraud, such as: obtaining a driver's license or official identification card in the victim's name but with their picture; using the victim's name and social security number to obtain government benefits; or filing a fraudulent tax return using the victim's information.  In addition, identity thieves may obtain a job using the victim's social security number, rent a house or get medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.

10.     The unauthorized disclosure of a person's social security number can be particularly

damaging since social security numbers cannot be easily replaced like a credit card. In order to obtain a new social security number, a person must show evidence that someone is using the number fraudulently or is being disadvantaged by the misuse.[1] Thus, a person whose personal information has been stolen cannot obtain a new social security number until the damage has already been done. Furthermore, obtaining a new social security number is not an absolute prevention against identity theft. Governmental agencies, private businesses, and credit reporting businesses likely still have the person's records under the old number, and using a new number will not guarantee a fresh start. For some victims of identity theft, a new number may actually create new problems. Because prior positive credit information is not associated with the new social security number, it is more difficult to obtain credit due to the absence of a credit history.

## PARTIES AND JURISDICTION

11.     Plaintiffs are citizens and residents of Illinois. Plaintiff's mortgage loan was owned and serviced by Countrywide.

12.     Defendant COUNTRYWIDE FINANCIAL CORPORATION ("Countrywide Financial") is a corporation incorporated under the laws of the state of Delaware, with its principle place of business located in California. At all times relevant to this complaint, Countrywide Financial transacted business throughout the state of Illinois and in this District.

13.     Defendant COUNTRYWIDE HOME LOANS, INC. ("Countrywide Home") is a corporation organized under the laws of the state of New York, with its principle place of business in California. At all times relevant to this Complaint, Countrywide Home transacted business in the state of Illinois and in this District.

---

[1] Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007, ICN 46327.

4

14.    Defendant BANK OF AMERICA CORPORATION ("BofA") is a corporation organized under the laws of the state of Delaware, with its principle place of business in North Carolina. At all times relevant to this Complaint, BofA transacted business in the state of Illinois and in this District.

15.    Defendant COUNTRYWIDE BANK FSB ("Countrywide Bank") is a subsidiary of Countrywide Financial and is a Virginia corporation, with its principle place of business in California. At all times relevant to this Complaint, Countrywide Bank transacted business in the State of Illinois and in this District. Plaintiff is informed and believes that Full Spectrum Lending ("Full Spectrum") was at one time a separate corporation which merged with Countrywide Home in or about 2004, thus becoming a division of Countrywide Bank.

16.    Defendant Bank of America purchased Countrywide Financial and Countrywide Home and, as a result, Countrywide Financial and Countrywide Home have merged with Bank of America. On information and belief BofA was aware of the actions giving rise to these claims at the time of its purchase. In this Complaint, each of the above entities, unless otherwise noted, will be collectively referred to as "Defendants."

17.    This Court has jurisdiction over the federal claim herein pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims herein under 28 U.S.C. § 1367. Further, this Court also has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendants. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has personal jurisdiction over Defendants because they own and operate a business that is located within Illinois, conduct substantial business throughout Illinois and/or have sufficient

minimum contacts with the State of Illinois.

18.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(c), because a substantial part of the acts giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

19.     Countrywide is a consumer loan company doing business throughout the United States.

20.     Countrywide provides home loan servicing to consumers and does business throughout the United States.

21.     Countrywide maintains a large computer system that stores customers' and mortgage applicants' names, social security numbers, home and/or office addresses, telephone numbers, credit and bank account information, and other financial information ("Private Information") for Plaintiffs and tens of thousands of putative class members who either received or applied for a loan from Countrywide.

22.     Plaintiffs are current Countrywide customers whose mortgage loan is owned and/or serviced by Countrywide.

23.     Defendants stored Plaintiff's Private Information within its computer system.

24.     On or about August 1, 2008, the FBI announced that a former high-level employee of Defendants was arrested for stealing and selling its customers' Private Information, which included their full social security numbers, to third parties.

25.     Following an extensive investigation by the FBI, it was discovered that Rene L. Rebollo, Jr., a senior level financial advisor, was stealing and unlawfully selling customers' Private Information to third parties.

26.     Rebollo discovered a security lapse and used a thumb drive to download and compromise Plaintiff's and the Class' Private Information.

6

27.    According to authorities, Rebollo worked in Defendants' subprime mortgage division, and

Siddiqi"), who would in turn sell the Private Information to other companies.

28.    Many companies that handle sensitive data also maintain systems that enforce encryption

rules and prevent most workers from copying sensitive data.

29.    Additional measures could have been taken by Defendants to prevent an incident like this.

According to Pat Clawson, chairman and CEO of Lumension Security, if companies had policies

that require any device that touches the network to be checked, then "[n]o matter if that device is

a laptop or a handheld, it has to go through a scanning process to find if they have all the requisite

materials before you allow them to access the network," which did not happen here.

30.    Upon information and belief, Plaintiff and Class members' Private Information was illegally

sold to third parties.

31.    Upon information and belief, an agent of Countrywide improperly and illegally sold

Plaintiffs' and approximately two million putative class members Private Information sold to third

parties without Plaintiff's or Class members' permission or for any permissible purpose under the

law.

32.    Neither Plaintiffs nor the putative class agreed to allow Defendants  to disseminate their

Private Information to third parties.

33.    The Private Information that was improperly disseminated has an independent, discernable

market value, as similar financial information is frequently bought and sold.

34.    Defendants negligently failed to install reasonable security measures on a computer

containing their customers' Private Information, including encryption of said information, which

would prevent the downloading of Private Information to portable devices. The security measures

that Defendants failed to take were employed by Defendants on all other computers containing

Plaintiff's and the Class' Private Information.  Defendants' also failed to provide timely notice of the breach of their computerized data systems and theft of Plaintiff's and the Class members' Private Information to Plaintiff and the Class.

35.    As a direct and proximate result of these acts Plaintiffs Private information was compromised and Plaintiffs discovered that fraudulent charges in excess of $1,000 were made on a credit card  owned by Dona Kare-Kowalski.

### Countrywide's Privacy Policy

36.    Defendants have represented to Plaintiff and the Class that they understand the value in protecting Private Information.[2]  Defendants claim to "safeguard" their customers' data by:

- setting policies and procedures for carefully handling customers' information;

- limiting employee access to sensitive information;

- protecting against unauthorized access to customer data using data encryption, authentication, and virus detection technology;

- requiring service providers who do business with Countrywide to comply with privacy laws;

- auditing company security practices;

- monitoring Countrywide's websites  through recognized online privacy and security organizations such as Cybertrust Corporation; and

- conducting background checks on all employees and providing privacy training.

37.    Further, the Full Spectrum website provides the following response to the question "[i]s my

---

[2]  See Countrywide Privacy Policy, *available at* http://my.countrywide.com/ Privacy.aspx

personal information secure?" on its "Frequently Asked Questions" page:

> At Countrywide Bank's Full Spectrum Lending Division we maintain stringent security standards to ensure that your private data remains safe. We use advanced data encryption and storage technology to protect your sensitive personal information, and we are proud members of recognized online privacy and security organizations such as TruSecure Corporation, and VeriSign™, Inc.[3]

38.    Defendants failed to follow the security measures outlined in the above-mentioned privacy policy practices in failing to detect a security breach whereby one of its employees stole, with the intent to sell, over 2 million customers' and mortgage applicants' Private Information without detection for a period of at least two years.

39.    Federal and state legislatures have passed a number of laws in recent years to ensure companies protect the security of sensitive personal information in a company's files. These laws include requirements for the handling of personal information by financial institutions and also impose proactive obligations on companies to maintain reasonable security measures to protect the personal information of individuals. The Gramm-Leach-Bliley Act, requires the FTC and other government agencies that regulate financial institutions to implement regulations to carry out the Act's financial privacy provisions.

40.    The Federal Trade Commission ("FTC") has issued a publication entitled "Protecting Personal Information: A Guide for Business" ("FTC Report"). In this publication, the FTC provides guidelines for businesses on how to develop a "sound data security plan" to protect against crimes of identity theft. To protect the personal sensitive information in their files, the FTC Report instructs businesses to follow the following guidelines:

---

[3] *See* Countrywide Full Spectrum Lending Division's Frequently Asked Questions, *available at* http://www.fullspectrumlending.com/toolsfaqs/faqs.aspx.

a.    Understand the vulnerabilities of your computer system and follow the advice of experts in the field;

b.    Keep an inventory of all computers and laptops where the company stores sensitive data;

c.    Use social security numbers only for required and lawful purposes and do not store these numbers unnecessarily, such as for an employee or customer identification number;

d.    Encrypt the personal information particularly if the sensitive information is shipped to outside carriers or contractors.  In addition, the business should keep an inventory of all the information it ships;

e.    Do not store sensitive computer data on any computer with an Internet connection unless it is essential for conducting the business;

f.    Use an intrusion detection system for detecting network breaches that is updated frequently to address new types of computer hacking;

g.    Maintain a central log file of security-related information to monitor activity on the network so as to spot and respond to attacks;

h.    Monitor outgoing traffic for signs of a data breach, watching for unexpectedly large amounts of data being transmitted from your system to an unknown user;

i.    If large amounts of information are being transmitted from the network, investigate to make sure the transmission is authorized;

j.    Have in place and implement a breach response plan;

k.    Check references or do background checks before hiring employees who will have access to sensitive data;

10

l.      Regularly remind employees of your company's confidentiality and security standards for handling sensitive data to keep customer information secure and confidential;

m.      Know which employees have access to consumers' sensitive personally identifying information, paying particular attention to data like Social Security numbers and account numbers; and

n.      Have a procedure in place for making sure that workers who leave your employ or transfer to another part of the company no longer have access to sensitive information, terminating their passwords, and collecting keys and identification cards as a part of the check-out routine.

41.    Thus, Plaintiff and the Class now face years of constant surveillance, monitoring and loss of rights, not to determine whether they will become an identity theft victim, because they already are, but to prevent further loss and damage.

## CLASS ACTION ALLEGATIONS

42.    This action is brought on behalf of Plaintiff, individually and as a class action, on behalf of all persons whose Consumer Reports, as defined by 15 U.S.C. § 1681a(d)(1), were sold by Defendants' employee, Rene L. Rebolla, Jr., to any other person or entity.  The Class does not include Defendants, or their officers, directors, agents, or employees.

43.    Upon information and belief, the Class is composed of tens of thousands of consumers and joinder of all in one action is impracticable.

44.    Because of the nature of the claims here the Defendants have acted in the same way as to all class members.

45.    The questions of law and fact common to the Class predominate over any individual

11

questions which may affect Class members.

46.    These common questions include:

    a.    whether Defendants' employee sold Consumer Reports within the meaning of 15 U.S.C. § 1681a(d)(1) without Plaintiff's and Class members' authorization;

    b.    whether Defendants' agent had a permissible purpose under the FCRA to sell Consumer Reports within the meaning of 15 U.S.C. § 1681a(d)(1);

    c.    whether Defendants violated the FCRA by failing to properly maintain reasonable procedures designed to limit the furnishing of Consumer Reports to the permissible purposes outlined under the FCRA;

    d.    whether Defendants violated the FCRA when their employee sold Consumer Reports to third parties in violation of the FCRA;

    e.    whether Defendants' conduct was reckless;

    f.    whether Defendants' conduct was negligent;

    g.    whether Defendants were negligent in collecting and storing the Private Information of their customers;

    h.    whether Defendants took reasonable measures to safeguard the Private Information of their customers;

    i.    whether Defendants owed a duty to Plaintiff and/or the Class to protect their Private Information;

    j.    whether Defendants breached their duty to exercise reasonable care in storing their customers' Private Information by storing that information on their computer systems and in their physical possession;

    k.    whether Defendants breached a duty by failing to keep Plaintiff's and Class

12

members' Private Information secure;

l.       whether Defendants were negligent in failing to keep Plaintiff's and Class members' Private Information secure;

m.      whether statutory damages are proper in this matter;

47.     Plaintiffs will fairly and adequately represent and protect the interests of the Class, in that they have no interest that is antagonistic to or that irreconcilably conflicts with those of other members of the Class.

48.     Plaintiffs have retained counsel competent and experienced in the prosecution of class action litigation and adjudication of Plaintiffs' and the Class members' claims. Plaintiffs and the members of the Class have suffered irreparable harm as a result of Defendants' deceptive, negligent, and unlawful conduct. The damages suffered by individual Class members may be relatively small, and thus few, if any individual Class members can afford to seek legal redress on an individual basis for the wrong complained of herein. Absent a class action, Plaintiffs and members of the Class will continue to suffer losses as a result of Defendants' unlawful and negligent conduct.

## COUNT I

## RECKLESS OR WANTON VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

49.     Plaintiffs re-allege the paragraphs 1-48 as if fully set forth herein.

50.     The FCRA was created to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *See* 15 U.S.C. 15 U.S.C. § 1681 *et seq.*

51.     A "consumer report" means any written, oral, or other communication of any information

by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes; or any other purpose authorized under 15 U.S.C. § 1681 (b). *See* 15 U.S.C. § 1681a(d)(1).

52.     A "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing Consumer Reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing Consumer Reports. 15 U.S.C. § 1681a(f).

53.     Plaintiffs and the other Class members are "consumers" or "persons," as defined and construed under the FCRA.  *See* 15 §§ 1681(a) (b)&.(c).

54.     Defendants are Consumer Reporting Agencies, as defined under the FCRA, because they, for monetary fees, dues, or on a cooperative non-profit basis, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing personal, nonpublic information of their customers to third parties, and use interstate commerce for the purpose of preparing or furnishing Consumer Reports.

55.     Defendants maintain Consumer Reports of their customers as defined under the FCRA, because they are written, oral, or other communications of information which bear on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or n part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance

14

to be used primarily for personal, family, or household purposes; employment purposes; or any other purpose authorized under section 15 U.S.C. §1681(b).

56.    The Private Information sold by Defendants' employee amounted to Consumer Reports as defined under the FCRA.

57.    As a Consumer Reporting Agency, Defendants are required to maintain reasonable procedures designed to limit the furnishing of Consumer Reports to the permissible purposes outlined under the FCRA. *See* 15 U.S.C. § 1681e.

58.    In conscious disregard of the rights of Plaintiffs and the Class, Defendants deliberately and/or recklessly did not maintain reasonable procedures designed to limit the furnishing of Consumer Reports to the permissible purposes outlined under the FCRA, specifically 15 U.S.C. § 1681e.

59.    As enumerated above, Defendants' reckless conduct allowed their high-level employee to obtain the subject Consumer Reports and sell them to third-parties without Plaintiffs' or Class members' consent and for no permissible purpose under the FCRA.

60.    Further, Defendants are responsible for their employee's actions as an agent of Defendants.

61.    Defendants' conduct violated the FCRA, and Plaintiffs and Class members have been damaged by Defendants' intentional and/or reckless actions. At all times material, Defendants had or should have had full knowledge of their employee's conduct.

62.    As a result of Defendants' conduct, Plaintiffs and Class members are entitled to actual damages sustained or statutory damages of not less than $100 and not more than $1,000, as well as the costs and attorney's fees in bringing this action. *See* 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated,

respectfully asks that this Court enter an Order:

    a.      certifying the matter as a class action with Plaintiffs as Class Representative and designating Plaintiffs' counsel as class counsel;

    b.      finding that Defendants intentionally and/or recklessly violated the FCRA due to their failure to maintain reasonable procedures designed to limit the furnishing of reports to the permissible purposes outlined under the FCRA;

    c.      finding that Defendants are responsible for their employee's actions as an agent of Defendants;

    d.      requiring Defendants to pay actual damages sustained or statutory damages of not less than $100 and not more than $1,000;

    e.      enjoining Defendants from actions which place consumers at a risk of future security breaches;

    f.      requiring Defendants to pay Plaintiff and Class members reasonable attorneys' fees and costs of litigation; and

    g.      providing for such other legal and/or equitable relief as justice requires.

## COUNT II

## NEGLIGENT VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

63.    Plaintiffs re-alleges paragraphs 1-57 of this complaint as if fully set forth herein.

64.    Defendants were negligent in failing to maintain reasonable procedures to protect their Consumer Reports.

65.    As enumerated above, Defendants' conduct allowed a high-level employee to obtain the subject Consumer Reports and sell them to third parties without Plaintiffs' or Class members' consent and for no permissible purpose, in violation of the FCRA.

16

66.     Further, Defendants are responsible for their employee's actions as an agent of the Defendants.

67.     Defendants' conduct violated the FCRA, and Plaintiffs and Class members have been damaged by Defendants' actions.

68.     As a direct and proximate result of Defendants' conduct. Plaintiffs and the Class are entitled to actual damages to be proven at trial, as well as the costs and attorney's fees in bringing this action. *See* 15 U.S.C. 1681.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully asks that this Court enter an Order:

a.     certifying this matter as a class action with Plaintiffs as Class Representatives and designating Plaintiffs' counsel as class counsel;

b.     finding that Defendants violated the FCRA due to their failure to maintain reasonable procedures designed to limit the furnishing of reports to the permissible purposes outlined under the FCRA;

c.     finding that Defendants are responsible for their employee's actions as an agent of the Defendants;

d.     requiring Defendants to pay actual damages sustained;

e.     enjoining Defendants from actions which place consumers at a risk of future security breaches;

f.     requiring Defendants to pay Plaintiffs and Class members reasonable attorneys' fees and costs of litigation; and

g.     providing for such other legal and/or equitable relief as justice requires.

## COUNT III

## BREACH OF FIDUCIARY DUTY

69.     Plaintiffs adopt and re-allege paragraphs 1-48 of this complaint as if fully set forth herein.

70.     Defendants came into possession of Plaintiffs and the Class' Private Information and had a duty to exercise reasonable care in safeguarding and protecting such Private Information from being compromised and/or stolen.

71.     Said Private Information was provided under circumstances whereby Plaintiffs and the putative class expected and trusted Defendants to protect such information as if it was their own.

72.     Defendants knew and understood that they were obtaining highly sensitive and personal data and intended to act as a fiduciary in regards to the protection of said Private Information.

73.     Defendants in fact had Fiduciary Duties to protect Plaintiffs' Private Information within their possession.

74.     Included within these fiduciary duties were duties to hire and supervise trustworthy employees, and to have procedures in place to detect and prevent dissemination of Plaintiffs' Private Information by and to unauthorized individuals.

75.     The above mentioned breach of security and unauthorized access was reasonably foreseeable to Defendants.

76.     Defendants, through their acts and/or omissions, breached their fiduciary duties to Plaintiffs and the Class by failing to exercise the highest degree of care in protecting and safeguarding Plaintiffs and the Class' Private Information within their possession.

77.     Defendants, through their actions and/or omissions, breached their duty to Plaintiffs and the Class by failing to hire and supervise trustworthy employees, and to have procedures in place to detect and prevent improper dissemination of their Private Information by its agents.

78.     Absent Defendants' breaches of their duties owed to Plaintiffs and the Class, their Private Information would not have been compromised.

79.     Plaintiffs' and the Class' Private Information was compromised, viewed, and/or stolen as the proximate result of Defendants failing to exercise reasonable care in safeguarding such Private Information by adopting, implementing, or maintaining appropriate security measures to protect and safeguard the Private Information within their possession.

80.     Plaintiffs and the Class suffered actual damages including, but not limited to: expenses for credit monitoring, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, respectfully ask that this Court enter an Order:

a.      certifying this matter as a class action with Plaintiffs as Class Representative and designating Plaintiffs' counsel as class counsel;

b.      finding that Defendants owed fiduciary duties to protecting Plaintiffs' and the Class' Private Information stored on their computer systems and in their physical possession and that Defendants breached said duties by allowing for the improper release and use of said Private Information;

c.      requiring Defendants to pay for monitoring Plaintiffs' and other Class members' financial accounts, and to compensate anyone who suffers damage as a result of the unauthorized release of their Private Information;

d.      enjoining Defendants from actions which place consumers at a risk of future security breaches;

19

e.     awarding damages to Plaintiffs and the Class under the common law theories alleged;

f.     requiring Defendants to pay Plaintiffs and Class members reasonable attorneys' fees and costs of litigation; and

g.     providing for such other legal and/or equitable relief as justice requires.


## COUNT V

## BREACH OF IMPLIED CONTRACT

95.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

96.   Defendants came into possession of Plaintiff's and the Class' Private Information and had an implied contract to protect such Private Information via Plaintiff and the Class providing Defendants with the requisite mortgage application information.

97.   The implied contract required Defendants to not disclose Plaintiff's and the Class' Private Information, and to safeguard and protect the Private Information from being compromised and/or stolen.

98.   Defendants did not safeguard and protect Plaintiff's and the Class' Private Information from being compromised and/or stolen.  Indeed, Defendants unlawfully and without permission disclosed this Private Information to third parties.

99.   Because Defendants disclosed Plaintiff's and Class members' Private Information and failed to safeguard and protect said information from being compromised and/or stolen, Defendants' breached their contract with Plaintiff and the Class.

100.  Plaintiff and the Class suffered actual damages including, but not limited to: anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully asks that this Court enter an Order:

a.     certifying this matter as a class action with Plaintiff as Class Representative and designating Plaintiff's counsel as class counsel;

b.     finding that Defendants breached their contract to safeguard and protect Plaintiff's and the Class' Private Information stored on their computer systems and in their physical possession;

c.     requiring Defendants to pay for monitoring Plaintiff's and other Class members' financial accounts and credit reports, and to compensate Plaintiff and Class members for all damages that result from the unauthorized release of their Private Information;

d.     enjoining Defendants from actions which place consumers at a risk of future security breaches;

e.     awarding damages to Plaintiff and the Class under the common law theories alleged;

f.     requiring Defendants to pay Plaintiff and Class members reasonable attorneys' fees and costs of litigation; and

g.     providing for such other legal and/or equitable relief as justice requires.


By:    /s/ Aron Robinson
One of Plaintiff's Attorneys

Aron D. Robinson
Law Office of Aron D. Robinson
19 South LaSalle, Suite 1300
Chicago, IL 60603
(312) 857-9050
(312) 857-9054 (Facsimile)

21